UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GREEN HAVEN PRISON PREPARATIVE
MEETING OF THE RELIGIOUS SOCIETY
OF FRIENDS, *et al.*,

                                    *Plaintiffs*,

        v.

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION, *et al.*,

                                    *Defendants*.

No. 18-CV-8497 (KMK)

ORDER & OPINION

Appearances:

Michael Ellenberg, Esq.
Ellenberg Gannan Henninger Fitzmaurice LLP
New York, NY
*Counsel for Plaintiffs*

Frederick R. Dettmer, Esq.
Law Office of Frederick R. Dettmer
New Rochelle, NY
*Counsel for Plaintiffs*

Steven Schulman, Esq.
Office of the New York State Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

        On September 19, 2018, the Green Haven Prison Preparative Meeting of the Religious

Society of Friends ("Green Haven Meeting"), Yohannes Johnson ("Johnson"), Gregory

Thompson ("Thompson"), Nine Partners Quarterly Meeting of the Religious Society of Friends,

Donald Badgley, Emily Boardman, Bulls Head-Oswego Monthly Meeting, Carole Yvonne New,

David Leif Anderson, Poughkeepsie Monthly Meeting, Frederick Doneit, Sr., Julia Giordano, Margaret L. Seely, Solange Muller, and the New York Yearly Meeting of the Religious Society of Friends, Inc. (collectively "Plaintiffs") brought this action against the New York State Department of Corrections and Community Supervision ("DOCCS"), Acting Commissioner of DOCCS Anthony Annucci ("Annucci"), Deputy Commissioner for Program Services of DOCCS Jeff McKoy ("McKoy"), Director of Ministerial, Familial, and Volunteer Services of DOCCS Alicia Smith-Roberts ("Smith-Roberts"), former Superintendent of Green Haven Correctional Facility ("Green Haven" or "Green Haven CF") Jamie LaManna ("LaManna"), successive Green Haven Deputy Superintendents of Program Services Jaifa Collado ("Collado") and Marlyn Kopp ("Kopp") (collectively "Defendants") for alleged violations of Plaintiffs' rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc, et seq.; violations of the First Amendment's Free Exercise, Free Speech, and Establishment clauses and the Fourteenth Amendment's Equal Protection clause, as made actionable by 42 U.S.C. § 1983; Article I, § 3 of the New York State Constitution; and New York Correction Law § 610, via restrictions imposed on communal religious practices of members of the Religious Society of Friends at Green Haven.[1]  (*See generally* Compl. (Dkt. 4).)

---

[1] At the time this Action commenced, Johnson and Thompson were incarcerated, but they have since been released to community supervision.  (*See* Def.'s Mem. of Law in Supp. of Post-Remand Mot. to Dismiss ("Defs.' Mem.") 3 (Dkt. No. 124) (citing https://nysdoccslookup.doccs.ny.gov/ (DIN 82A1913, Johnson; 85A1361, Thompson).)

However, for the sake of clarity, and following the format of the previous decisions in this Action, throughout this Opinion, Johnson and Thompson will still be collectively referred to as "Incarcerated Plaintiffs" and the eight other Plaintiffs will be collectively referred to as "Non-Incarcerated Plaintiffs."

Subsequent decisions by this Court and the Second Circuit dismissed various parties and claims from the original Complaint. *See generally Green Haven Prison Preparative Meeting v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 18-CV-8497, 2022 WL 902933 (S.D.N.Y. Mar. 28, 2022), *aff'd in part, vacated in part, remanded*, 2024 WL 442454 (2d Cir. Feb. 6, 2024) (summary order). At present, all that remains is Non-Incarcerated Plaintiffs' Free Exercise claim against Defendants. *See id.* at *3 (remanding Non-Incarcerated Plaintiffs' Free Exercise claim in light of the Second Circuit's decision in *Kravitz v. Purcell*, 87 F.4th 111 (2d Cir. 2023)).

Before the Court is Defendants' Post-Remand Motion to Dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and failure to join a necessary party pursuant to Federal Rules of Civil Procedure 12(b)(7) and 19. (*See* Defs.' Mot. to Dismiss (the "Motion") (Dkt. 123)). For the foregoing reasons, the Motion is denied.

## I. Background

A. Factual Background

The following facts are drawn from the Complaint and assumed to be true for the purpose of resolving Plaintiff's Motion to Dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam). Where relevant, the Court also recounts facts from the various other materials the Court has ruled it may consider in deciding Defendants' Motion.

The Court assumes the Parties' familiarity with the factual and procedural background of this Action as described in its prior Opinion. *See Green Haven Prison Preparative Meeting*, 2022 WL 902933, at *2–7. Thus, the Court only summarizes the facts and procedural background necessary to decide the instant Motion.

Non-Incarcerated and Incarcerated Plaintiffs are a group of individuals and associations that are part of the Religious Society of Friends, also known as Quakers (hereinafter, "Friends" or "Quakers"). (Compl. ¶ 1.) The Quakers are a long-standing religion. (*See id.* ¶ 29.) Their religious practices include "meetings," which are the equivalent of both a congregation and a religious service. (*Id.* ¶¶ 30–38.) One traditional Quaker practice is the Quarterly Meeting, which is a gathering four times a year to foster relationships between Quakers from different meetings (congregations) in the same geographic area. (*Id.* ¶¶ 39–42.)

Green Haven Meeting is a monthly meeting of Friends who are incarcerated at Green Haven, of which Incarcerated Plaintiffs were members during their time at Green Haven. (*See id.* ¶¶ 5–7, 44.) Green Haven Meeting has been the religious base of incarcerated Quakers at Green Haven since 1976. (*See id.* ¶ 44.) Non-Incarcerated Plaintiffs are individual Friends and Quaker organizations who, prior to 2018, came into Green Haven at least once per year for full-day gatherings with the Incarcerated Plaintiffs, which eventually came to be known as Quarterly Meetings. (*See id.* ¶ 47.) From Plaintiffs' perspective, because Incarcerated Plaintiffs are confined to prison, the only way Quakers from outside meetings, such as Non-Incarcerated Plaintiffs, can meet with Incarcerated Plaintiffs is by holding Quarterly Meetings inside Green Haven. (*See id.* ¶ 43.)

Defendants are DOCCS and six of its officials. (*Id.* ¶¶ 21–27.) As outlined in DOCCS Directive No. 4202, each year, DOCCS officials prepare and distribute an annual "Religious Holy Day Calendar," which is in effect in all DOCCS facilities. (*Id.* ¶ 65.) Under Directive No. 4202, each "faith group" recognized by DOCCS can hold only one designated family event per year, which enables civilians to join inmates of their faith for joint worship, celebration, and fellowship. (*Id.* ¶¶ 66–67 (emphases omitted).) DOCCS' Religious Holy Day Calendar

4

classifies Quakers as "Protestant," alongside 19 other faith groups, and assigns Pentecost as the "Family Day Event" for all Protestant faith groups. (*Id.* ¶¶ 68–70.)  However, Quakers do not celebrate Pentecost and historically did not participate in any religious holidays. (*Id.* ¶ 71.)

In 2012, Green Haven Meeting—via its then-member Thaddeus Davis ("Davis")—requested that DOCCS add Quarterly Meetings to the Religious Holy Day Calendar. (*See id.* ¶ 77.)  In response, then-Director of Ministerial, Family, and Volunteer Services Cheryl Morris ("Morris") advised Davis that "any religious requests and concerns" should be directed to the Green Haven chaplain, (*id.* ¶ 78 (italics omitted)), Quarterly Meetings were not added to the Religious Holy Day Calendar, and Friends continued to be designated as Protestant and assigned Pentecost as their "Family Day Event[,]" (*id.* ¶ 79).  In 2013, Davis appealed to McKoy, the Deputy Commissioner for Program Services, who denied Davis's request on November 22, 2013, based on information provided by "Quaker religious authorities." (*Id.* ¶¶ 80–83.)[2]  Like Morris, McKoy also advised Davis that any religious requests should be first directed to the Green Haven chaplain and then Green Haven's Deputy Superintendent for Program Services. (*Id.* ¶ 88.)

As such, in 2015, Davis reiterated his request for Quarterly Meetings to be added to the Religious Holy Day Calendar to Wayne Carroll, the "RPL II/Special Subjects Supervisor" for Green Haven, and "Rev[erend] Dr. Gideon Jebamani," Green Haven's "Protestant Chaplain and Staff Advisor." (*Id.* ¶ 90.)  On December 16, 2014, Davis received a response from Collado,

---

[2] Plaintiffs allege that DOCCS "did not and does not consult with recognized 'Quaker religious authorities' in determining the permitted religious practices of incarcerated Friends," and, therefore, that DOCCS's "decisions regarding incarcerated Friends, and Green Haven Meeting in particular, were not and are not based on informed consideration of Quaker beliefs, practices, etc." (Compl. ¶¶ 85–86).

Green Haven's Deputy Superintendent for Programs, who requested additional information. (*Id.* ¶ 91.)  Davis provided the requested information, and on February 2, 2015, Collado denied Davis' request, explaining: "As indicated in a letter to you from [McKoy], it is not possible to implement all the religious practices within the facilities that are practiced in outside faith communities due to security concerns, institutional safety[,] and logistical considerations at this facility." (*Id.* ¶ 92.)  As a result, "Green Haven Meeting was not permitted to host," and Non-Incarcerated Plaintiffs "were not permitted to participate in, [Q]uarterly [M]eetings in Green Haven CF in 2015." (*Id.* ¶ 93.)

In response, nonparty Christopher Sammond ("Sammond"), the then-General Secretary of the New York Yearly Meeting, wrote to Annucci, the Acting Commissioner of DOCCS, to address, inter alia, the termination of Quarterly Meetings at Green Haven. (*Id.* ¶ 94.)  On April 21, 2015, Annucci responded by "with assurances that [Sammond's] concerns would be addressed at the highest level within DOCCS[.]" (Id.)  This correspondence led to a meeting between a delegation of Friends and DOCCS leadership on May 11, 2015, at which DOCCS leadership "promised to investigate and get back to Friends, but did not do so." (*Id.* ¶ 95.)  After additional correspondence, on October 15, 2015, Morris notified the New York Yearly Meeting that the Friends' request for inclusion of Quarterly Meetings in DOCCS's Religious Holy Days Calendar was rejected and instructed the Friends to direct their request to the executive staff at each facility. (*Id.* ¶¶ 96–97.)  Thereafter, Plaintiffs allege that Green Haven Meeting has submitted requests to resume holding Quarterly Meetings to Green Haven officials each year, which have all been rejected on the basis that the Religious Holy Day Calendar authorizes Friends to participate only in the Pentecost Family Day Event. (*Id.* ¶¶ 98–99.)

6

Additionally, "[i]n in the [s]pring of 2018, a final effort to engage DOCCS officials' attention was made through the Coordinating Chaplain with responsibility for Green Haven CF[,]" but Plaintiffs allege that "no positive response was forthcoming[,]" despite the fact that "[u]pon information and belief, DOCCS permits other similarly situated faith groups to hold events which are the equivalent of [Q]uarterly [M]eetings" and "to hold multiple family day events, or the equivalent, per year." (*Id.* ¶¶ 102–04.)

B.  Procedural Background

Plaintiffs filed the Complaint on September 19, 2018. (*See* Compl.) On December 21, 2018, Defendants filed a pre-motion letter in anticipation of moving to dismiss the Complaint. (*See* Letter from Steven Schulman, Esq. to Court (Dec. 21, 2018) (Dkt. No. 12).) On December 24, 2018, Plaintiffs filed a pre-motion letter in anticipation of filing a motion for a preliminary injunction. (*See* Letter from Frederick R. Dettmer, Esq. to Court (Dec. 24, 2018) (Dkt. No. 13).) After receiving responses from both would-be non-movants, (*see* Letter from Frederick R. Dettmer, Esq. to Court (Dec. 24, 2018); Letter from Steven Schulman to Court (Dec. 28, 2019) (Dkt. No. 15)), the Court held a pre-motion conference and set a briefing schedule for Plaintiffs' motion for a preliminary injunction, (*see* Dkt. (entry for Feb. 11, 2019)).

Plaintiffs filed their Motion for a Preliminary Injunction on March 29, 2019. (*See* Notice of Mot. for Prelim. Inj. (Dkt. No. 25); Aff. of Donald Badgley in Supp. of Mot. (Dkt. No. 27); Aff. of Mary Foster Cadbury in Supp. of Mot. (Dkt. No. 28); Aff. of Frederick R. Dettmer in Supp. of Mot. (Dkt. No. 29), Aff. of Frederick Doneit, Sr. in Supp. of Mot. (Dkt. No. 30); Aff. of Yohannes Johnson in Supp. of Mot. (Dkt. No. 31); Aff. of Rachel Ruth in Supp. of Mot. (Dkt. No. 32); Aff. of Christopher Sammond in Supp. of Mot. (Dkt. No. 33); Mem. of Law in Supp. of Mot. (Dkt. No. 34).) On May 30, 2019, Defendants filed their Opposition. (*See* Decl. of Rachel

7

Seguin in Opp'n to Mot. (Dkt. No. 42); Decl. of Jaifa Collado in Opp'n to Mot. (Dkt. No. 43); Decl. of Marlyn Kopp in Opp'n to Mot. (Dkt. No. 44); Decl. of Nancy Fernandez in Opp'n to Mot. (Dkt. No. 45); Mem. of Law in Opp'n to Mot. (Dkt. No. 46).)  On July 12, 2019, Plaintiffs filed their Reply and simultaneously sought leave to file excess pages.  (*See* Mot. for Leave to File Excess Pages (Dkt. No. 49); Reply Aff. of Donald Badgley in Supp. of Mot. (Dkt. No. 50); Reply Aff. of Frederick Dettmer in Supp. of Mot. (Dkt. No. 51); Reply Aff. of Yohannes Johnson in Supp. of Mot. (Dkt. No. 52); Reply Mem. of Law in Supp. of Mot. (Dkt. No. 53).) On July 16, 2019, the Court allowed Plaintiffs a more modest page extension than Plaintiffs requested, (Dkt. No. 54), and accordingly, Plaintiffs filed an Amended Reply Memorandum of Law on July 19, 2019, (*see* Am. Reply Mem. of Law in Supp. of Mot. (Dkt. No. 56)).  On October 4, 2019, the Court scheduled oral argument on Plaintiffs' Motion for a Preliminary Injunction, (Dkt. No. 58); oral argument was held on October 30, 2019, (*see* Dkt. (minute entry for Oct. 30, 2019)), and the Court denied Plaintiffs' Motion for a Preliminary Injunction, (*see* Order (Dkt. No. 61); *see also* Hr'g Tr. (Dkt. No. 84)).

Plaintiffs filed a Motion for Reconsideration of the Court's denial of Plaintiffs' Motion for a Preliminary Injunction on November 13, 2019.  (*See* Notice of Mot. for Recons. (Dkt. No. 62); Mem. of Law in Supp. of Mot. for Recons. (Dkt. No. 63).)  Defendants filed their Opposition to Plaintiffs' Motion for Reconsideration on November 26, 2019, (*see* Mem. of Law in Opp'n to Mot. for Recons. (Dkt. No. 67)), and on December 3, 2019, the Court denied Plaintiffs' Motion for Reconsideration, (*see* Order (Dkt. No. 68)).  On January 2, 2020, Plaintiffs appealed the Court's denial of their Motion for Reconsideration to the Second Circuit.  (*See* Notice of Interlocutory Appeal (Dkt. No. 70).)

Meanwhile, on November 15, 2019, Defendants filed another pre-motion letter in anticipation of filing a motion to dismiss.  (*See* Letter from Steven Schulman, Esq. to Court (Nov. 15, 2019) (Dkt. No. 64).)  After receiving Plaintiffs' response, (*see* Letter from Frederick R. Dettmer, Esq. to Court (Nov. 22, 2019) (Dkt. No. 65)), the Court set a briefing schedule, (*see* Dkt. No. 66).  On January 27, 2020, Defendants filed their Motion to Dismiss and for Summary Judgment on Exhaustion.  (*See* Notice of Mot.; Defs.' 56.1; Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 77); Decl. of Rachel Seguin in Supp. of Mot. ("Seguin Decl.") (Dkt. No. 78); Schulman Decl.)  On May 7, 2020, Plaintiffs filed their Opposition.  (*See* Dettmer Aff.; Pls.' Mem. of Law in Opp'n to Mot. ("Pls.' Mem.") (Dkt. No. 91); Pls.' Counter 56.1.)  On July 8, 2020, Defendants filed their Reply.  (*See* Reply Mem. of Law in Supp. of Mot. ("Defs.' Reply Mem.") (Dkt. No. 100).)  On October 18, 2021, the Second Circuit issued a decision affirming the Court's denial of Plaintiffs' Motion for a Preliminary Injunction.  *See Green Haven Prison Preparative Meeting v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 16 F.4th 67, 86 (2d Cir. 2021).

By Order dated March 28, 2022, the Court dismissed all claims against all Defendants. *See Green Haven Prison Preparative Meeting*, 2022 WL 902933, at \*9–18.  Specifically, the Court granted summary judgment to Defendants on all claims brought by Incarcerated Plaintiffs because it found there was "no genuine dispute that Incarcerated Plaintiffs did not exhaust their administrative remedies prior to bringing suit[,]" as required by 42 U.S.C. § 1997e(a), the Prison Litigation Reform Act of 1995 ("PLRA"), "and that their failure to exhaust cannot be excused." *Id.* at \*15.  The Court also dismissed Non-Incarcerated Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  *Id.* at \*15–17.  On appeal, the Second Circuit affirmed the

9

dismissal of all claims except Non-Incarcerated Plaintiffs' Free Exercise claim, which it

remanded. *See Green Haven Prison Preparative Meeting*, 2024 WL 442454, at *3.

On March 13, 2025, the Court held a status conference with the Parties. (*See* Dkt.

(minute entry for Mar. 13, 2025).) On March 24, 2025, Defendants sought leave to file a motion

to dismiss the Non-Incarcerated Plaintiffs' Free Exercise claim, (*see* Letter from Steven N.

Schulman, Esq. to Court (Mar. 24, 2025) (Dkt. No. 119)), which Non-Incarcerated Plaintiffs

opposed, (*see* Letter from Frederick R. Dettmer, Esq. to Court (Mar. 29, 2025)). The Court held

a pre-motion conference on April 23, 2025, and adopted a briefing schedule. (*See* Dkt. (minute

entry dated Apr. 23, 2025); Mot. Scheduling Order (Dkt. No. 122).) On May 30, 2025,

Defendants filed the instant Motion to Dismiss. (*See* Notice of Mot. to Dismiss (Dkt. No. 123);

Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Mem.") (Dkt. No. 124); Decl. of Steve N.

Schulman in Supp. of Mot. to Dismiss ("Schulman Decl.") (Dkt. No. 125).) On June 25, 2025,

Non-Incarcerated Plaintiffs filed their Opposition. (*See* First Mem. of Law in Opp'n to Mot. to

Dismiss ("Pls.' Opp.") (Dkt. No. 126).) On July 14, 2025, Defendants filed their Reply. (*See*

Reply Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Reply") (Dkt. No. 127).)

## II. Discussion

### A. Standard of Review

#### 1. Rule 12(b)(6)

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

[or her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation

of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (alteration and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of

Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to

11

the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

### 2. Rule 12(b)(7) and Rule 19

"A party may seek dismissal under Rule 12(b)(7) for failure to join a necessary party under Rule 19." *Garner v. Behrman Bros. IV, LLC*, 260 F. Supp. 3d 369, 380 (S.D.N.Y. 2017). Rule 19 sets forth a "two-step test for determining whether the [C]ourt must dismiss an action for failure to join a[] [necessary] party." *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000). A party is "necessary" under Rule 19 if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). If a court makes the "threshold determination that a party is necessary under Rule 19(a) and joinder of the absent party is not feasible for jurisdictional or other reasons, the court must then determine whether the party is 'indispensable' under Rule 19(b)." *Dunn v. Standard Bank London Ltd.*, No. 05-CV-2749, 2006 WL 217799, at *2 (S.D.N.Y. Jan. 30, 2006) (citation omitted). Rule 19(b) sets forth "factors to be considered by the Court" in determining a party is indispensable, which include:

> first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

12

*Garner*, 260 F. Supp. 3d at 380 (citing Fed. R. Civ. P 19(b)); *see also Cavaluzzi v. County of Sullivan*, No. 23-CV-11067, 2025 WL 1347142, at *8–9 (S.D.N.Y. May 8, 2025) (same); *Tutor Perini Building Corp. v. N.Y.C. Reg'l Ctr., LLC*, 525 F. Supp. 3d 482, 496 (S.D.N.Y. 2021) (same) (citing *CP Sols. PTE, Ltd. v. Gen. Elec. Co.*, 553 F.3d 156, 159 (2d Cir. 2009)).

B.  Analysis

As noted, the only remaining cause of action is Non-Incarcerated Plaintiffs' Free Exercise claim stemming from Defendants' alleged termination of Quarterly Meetings.  (*See* Compl. ¶¶ 149–50 ("Defendants' regulation and actions further prevent [Non-Incarcerated Plaintiffs] from worship[p]ing with Green Haven Meeting Friends in quarterly meetings, thereby depriving them of the ability to exercise their religion.  Defendants' imposition on and deprivations of [Non-Incarcerated Plaintiffs'] constitutional rights are not reasonably related to legitimate penological interests.").)  Defendants argue that Non-Incarcerated Plaintiffs' Free Exercise Claim must be dismissed because "providing [Non-Incarcerated] Plaintiffs with the injunctive relief that they seek necessarily requires the participation of at least one member of . . . Green Haven Meeting," and would "circumvent the requirement [that] [I]ncarcerated [P]laintiffs exhaust available administrative remedies pursuant to 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act of 1995 (PLRA)."  (Defs.' Mem. 10.)  They also argue Non-Incarcerated Plaintiffs have failed to join a necessary party because "at least once incarcerated person is necessary to their claim."  (*Id.* at 20.)  The Court will address each argument in turn.

1.  Failure to State a Claim

In the Second Circuit, "a plaintiff may carry the burden of proving a free exercise violation . . . by showing that a government entity has burdened his sincere religious practice pursuant to a policy that is not 'neutral' or 'generally applicable.'"  *Kravitz*, 87 F.4th at 127

13

(quoting *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 525 (2022) (citation omitted)).  The

Second Circuit has made clear that "[i]n the prison context, alleged violations of the right to free

exercise are judged under a reasonableness test less restrictive than ordinarily applied to alleged

infringements of fundamental constitutional rights."  *Id.* at 119 (quoting *O'Lone v. Est. of

Shabazz*, 482 U.S. 342, 349 (1987)) (internal quotation marks omitted).  Thus, "a prison

regulation [that] impinges on inmates' [right to Free Exercise] is valid if it is reasonably related

to legitimate penological interests."  *Id.*; *see also Young v. Coughlin*, 866 F. 2d 567, 570 (2d Cir.

1989) ("A prisoner's first amendment right to the free exercise of his religious beliefs may only

be infringed to the extent that such infringement is reasonably related to legitimate penological

interests.") (internal quotation marks omitted).  In making the reasonableness determination,

"several factors are relevant":

> First, there must be a valid, rational connection between the prison regulation and
> the legitimate governmental interest put forward to justify it. . . . A second factor
> relevant in determining the reasonableness of a prison restriction . . . is whether
> there are alternative means of exercising the right that remain open to prison
> inmates. . . . A third consideration is the impact accommodation of the asserted
> constitutional right will have on guards and other inmates, and on the allocation of
> prison resources generally. . . . Finally, the absence of ready alternative[]
> [regulations that accommodate the prisoner's rights] is evidence of the
> reasonableness of a prison regulation.

*Turner v. Safley*, 482 U.S. 78, 89–91 (1987) (quotation marks and citations omitted).  "The first

. . . 'factor' is more properly labeled an 'element' because it is not simply a consideration to be

weighed but rather an essential requirement."  *Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir.

2006) (collecting cases), *abrogated on other grounds by Kravitz*, 87 F.4th at 119.  After a

plaintiff has met the threshold requirement of showing the disputed conduct inhibits his exercise

of religion, "the defendants then bear the relatively limited burden of identifying the legitimate

penological interests that justify the impinging conduct;" after which the burden shifts back to

the plaintiff "to show that these [articulated] concerns were irrational."  *Id.* at 274–75 (quoting

14

*Ford v. McGinnis*, 352 F.3d 582, 595 (2d Cir. 2003) (internal citation and quotation marks omitted)).

In the Complaint, Non-Incarcerated Plaintiffs claim a right to freely practice their religion by associating with incarcerated persons for the purpose of collective worship and religious discussion and that Defendants infringed on this right by allegedly cancelling the Quarterly Meetings inside Green Haven. (*See* Compl. ¶¶ 43, 148–54.) Defendants contend that Non-Incarcerated Plaintiffs' Free Exercise claim should be dismissed because "[w]hatever benefit [Non-Incarcerated] Plaintiffs derive from the Quarterly Meetings [is] inescapably . . . intertwined with conferring a benefit on the dismissed Plaintiff Green Haven Meeting, which is not entitled to [injunctive] relief because none of its members exhausted." (Defs.' Mem. 17 (citation omitted).) However, Defendants acknowledge that Non-Incarcerated Plaintiffs are not subject to the PLRA's exhaustion requirement. (*Id.* at 18; Defs.' Reply 4.) Thus, the vindication of Non-Incarcerated Plaintiffs' Free Exercise rights does not depend on whether Incarcerated Plaintiffs have exhausted their administrative remedies to vindicate those rights. As noted above, the claims of the two categories of Plaintiffs overlap, but are not co-dependent. *Green Haven Prison Preparative Meeting,* 16 F.4th at 79–80, 83.

On a motion to dismiss, the court's task is limited to determining whether the Complaint states a "plausible claim for relief." *Iqbal*, 556 U.S. at 679; *cf. id.* at 555. As detailed above, when assessing a Free Exercise claim, courts ask "(1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials . . . furthers legitimate penological objective[s].'"

15

*Kravitz*, 87 F.4th at 128 (quoting *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988)) (internal quotation marks omitted).

Non-Incarcerated Plaintiffs allege a sincerely held religious belief in their Complaint and explain the religious significance of Quarterly Meetings as part of their beliefs. (*See* Compl. ¶¶ 39–43.) Defendants do not appear to argue, (*see* Defs.' Mem. 9–20)—nor does this Court doubt)—that Non-Incarcerated Plaintiffs' religious beliefs are sincerely held. The Complaint also explains how the cancellation of Quarterly Meetings at Green Haven has impinged upon Non-Incarcerated Plaintiffs' religious practice: "[b]ecause Friends in Green Haven Meeting are physically restricted . . . the only way [Non-Incarcerated Plaintiffs] can receive and benefit from Green Haven Meetings Friends' experience of God's guidance[] is through holding [Q]uarterly [M]eetings inside Green Haven CF." (Compl. ¶ 43.) Finally, the Complaint sufficiently alleges the absence of penological interest in Defendants' decision to cancel and subsequent refusal to reinstate Quarterly Meetings at Green Haven. Although the Complaint states that Incarcerated Plaintiffs were first advised that their request to reinstate Quarterly Meetings was denied because "it is not possible to implement all religious practices within the facilities that are practiced in outside faith communities due to security concerns, institutional safety[,] and logistical considerations[,]" (Compl. ¶ 92), it goes on to allege that subsequent requests to hold Quarterly Meetings at Green Haven were "rejected . . . on the basis that the Religious Holy Days Calendar . . . authorizes Friends to participate in the Pentecost Family Day Event[,]" (*id.* ¶¶ 98–99). Defendants' alleged provision of conflicting reasons for denying the reinstatement of Quarterly Meetings raises "factual question[s] not appropriate for disposition on a motion to dismiss." *Exxon Mobil Corp. v. Tredegar Corp.*, 891 F. Supp. 2d 559, 565 (S.D.N.Y. 2012). Put another

16

way, the Court concludes that Non-Incarcerated Plaintiffs have plausibly stated a Free Exercise claim.

For their part, Defendants' submissions in support of the Motion treat the question of whether Non-Incarcerated Plaintiffs have stated a claim as a foregone conclusion.  Instead of attacking the sufficiency of Non-Incarcerated Plaintiffs' pleading, Defendants focus the inappropriate nature of the requested relief.  (*See generally* Defs.' Mem.; Defs.' Reply.) However, on a motion to dismiss, the court's task is limited to determining whether the Complaint states a "plausible claim for relief," *Iqbal*, 556 U.S. at 679, so Defendants' focus on the type of relief sought is misplaced at this stage in the litigation.  There may well be valid reasons to justify Defendants' restrictions of the Quarterly Meetings, *see Green Haven Prison Preparative Meeting,* 16 F.4th at 83–86 (affirming denial of preliminary injunction because plaintiffs had failed to establish a likelihood of success on the merits), and those justifications may become apparent at summary judgment.  For now, however, the Court denies Defendants' Motion to Dismiss.

### 2.  Failure to Join a Necessary Party

Defendants also move to dismiss Non-Incarcerated Plaintiffs' claim on the grounds that "at least one [I]ncarcerated [P]laintiff is necessary to [Non-Incarcerated Plaintiffs'] claim" under each of the three categories outlined in Rule 19(a)(1).  (Defs.' Mem. 20.)  For the following reasons, the Court disagrees.

### a.  Rule 19(a)(1)(A)

Under Rule 19(a)(1)(A), a party is necessary to the litigation if, in the party's absence, complete relief cannot be granted among the parties present.  This provision "stresses the desirability of joining those persons in whose absence the court would be obliged to grant partial

or 'hollow' rather than complete relief to the parties before the court." Fed. R. Civ. P. 19 (advisory committee's note). Defendants assert that the Court cannot grant complete relief "in the absence of Green Haven Meeting or an incarcerated member of it" because Non-Incarcerated Plaintiffs "are seeking to compel Defendants to allow them to enter Green Haven to meet with members of Green Haven Meeting[,] . . . [but] there is no allegation that any specific incarcerated individual wants to participate in [these meetings] or insists on the format alleged in the Complaint." (Defs.' Mem. 20–21.)

Defendants' argument misinterprets the meaning of "complete relief" in the context of Rule 19(a)(1)(A). To redress *their* Free Exercise claim, Non-Incarcerated Plaintiffs are only seeking "an order directing Defendants to accommodate [Non-Incarcerated] Plaintiffs' religious practices by, among other things, authorizing the holding of [Q]uarterly [M]eetings at Green Haven CF." (Compl. ¶ 151.) Non-Incarcerated Plaintiffs' alleged constitutional right to hold Quarterly Meetings at Green Haven does not depend on the willingness of incarcerated persons to attend the meetings. Courts hearing First Amendment claims by, for example, publishers seeking to send correspondence to prisoners, or legal service organizations seeking to send legal mail to prisons free of burdensome restrictions, have allowed those claims to proceed even when a prisoner is not joined as a party. *See Thornburgh v. Abbott*, 490 U.S. 401, 408 (1989) ("[T]here is no question that publishers who wish to communicate with those who, through subscription, willingly seek their point of view have a legitimate First Amendment interest in access to prisoners."); *Prisoners' Legal Servs. v. U.S. Dep't of Homeland Sec.,* No. 25-CV-1965, 2025 WL 2466664, at *7, n.6 (S.D.N.Y. Aug. 5, 2025) (noting that "it is well settled that non-incarcerated individuals have standing to challenge detention center policies that infringe on First Amendment rights") (report and recommendation). Here, likewise, the Court sees no reason why

18

the relief the Non-Incarcerated Plaintiffs seek—authorization of Quarterly Meetings—would require an Incarcerated Plaintiff's presence in the litigation or why they would be prejudiced in their absence, even if Defendants believe their presence would be required at a Quarterly Meeting.  *See Peregrine Myan. Ltd. v. Segal*, 89 F.3d 41, 48–49 (2d Cir. 1996) (holding dismissal under Rule 19 was not appropriate where, inter alia, "the scope of the relief provided by the district court (which the plaintiffs consider 'complete,' at least at this stage of the proceedings) remains the same" regardless of the assertedly indispensable party's participation in the case); *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Bristol Brass Co.*, 123 F.R.D. 431, 433 (D. Conn. 1989) ("Merely because one may have an interest in the subject matter of an action, or some forms of relief might not be available due to the absence of a party, does not mean that person is an indispensable party." (citing *Smith v. United Bhd. of Carpenters*, 685 F.2d 164 (6th Cir. 1982)).  Indeed, it is Defendants' decision to bar the Quarterly Meetings that potentially violates the Free Exercise rights of Non-Incarcerated Plaintiffs.  *See Prisoners' Legal Servs.*, 2025 WL 2466664, at \*7 ("Plaintiffs contend that the November 2024 Policy infringes on their First Amendment right to communicate with their clients 'by creating the unjustified risk that ICE officers may read or access' a detained individual's legal mail.").  Any doubt that the Non-Incarcerated Plaintiffs have an independent First Amendment right is erased by the Second Circuit's decision to affirm the Court's denial of Plaintiffs' preliminary injunction request.  In so doing, the Second Circuit held that the Non-Incarcerated Plaintiffs had standing to challenge DOCCS' restrictions of the Quarterly Meetings independent of the standing of the Incarcerated Plaintiffs.  *Green Haven Prison Preparative Meeting,* 16 F.4th at 79–80 ("We conclude that the Non-Incarcerated Plaintiffs have Article III standing to challenge the policy changes relating to the Quarterly Meetings, and Green Haven

19

Meeting has Article III standing to challenge all the policy changes.  And of course, . . . the individual Incarcerated Plaintiffs unquestionably have Article III standing to challenge all of the policy changes at issue.").  Even though the Second Circuit held that the claims of the individual Incarcerated Plaintiffs should be dismissed for failure to exhaust, it nonetheless went on to evaluate the merits of the Non-Incarcerated Plaintiffs' claims.  *Id.* at 83.  And, to the extent the claims do not lie against any subset of Defendants, "complete relief can be granted among the parties present because every party from or against whom Plaintiffs seek relief on this matter is named as a defendant."  *Cont'l Cas. Co. v. Am. Home Assurance Co.*, No. 05-CV-7874, 2008 WL 1752231, at *3 (S.D.N.Y. Apr. 14, 2008).

        b.  Rule 19(a)(1)(B)

As a threshold matter, Rule 19(a)(1)(B) requires the absent party to "claim an interest" in the litigation.  Defendants contend that Incarcerated Plaintiffs have met this requirement because they "were originally parties asserting their own interest in the Quarterly Meetings[.]"  (Defs.' Mem. 22.)  However, the case cited by Defendants in support of this proposition says nothing about a previously dismissed party having claimed an interest in the outcome of the litigation. *See Cont'l Cas. Co.*, 2008 WL 1752231, *4 (finding that the defendant's attempt to assert the absent party's interest in the litigation failed to satisfy the threshold requirement of Rule 19(a)(1)(B) because the absent party had not asserted the interest for itself); *see also Peregine Myanmar*, 89 F.3d at 49 (2d Cir. 1996) (same).

Even if Defendants had shown the Incarcerated Plaintiffs had claimed an interest in the litigation, their arguments under 19(a)(1)(B)'s two prongs are unpersuasive.  Defendants argue that Incarcerated Plaintiffs' interests are not adequately protected by Non-Incarcerated Plaintiffs because "merely sharing an interest in the outcome [of a case] does not mean that existing parties

can adequately represent the interests of absent parties." (Defs.' Mem. 22.)  In construing this subsection of Rule 19, the Second Circuit has held that:

> [i]t is not enough under Rule [19(a)(1)(B)(i)] for a third party to have an interest, even a very strong interest, in the litigation.  Nor is it enough for a third party to be adversely affected by the outcome of the litigation. Rather, necessary parties under Rule [19(a)(1)(B)(i)] are only those parties whose ability to protect their interests would be impaired *because of* that party's absence from the litigation.

*Fed. Ins. Co. v. SafeNet, Inc.*, 758 F. Supp. 2d 251, 258 (S.D.N.Y. 2010) (emphasis in original) (quoting *MasterCard Int'l, Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 386–87 (2d Cir. 2006)).  When making a motion to dismiss under Rule 19(a)(1)(B), "[t]he burden is on the moving party to show the nature of the material interests of the absent person in the subject matter of the suit." *Ashley v. Am. Airlines, Inc.*, 738 F. Supp. 783, 788 (S.D.N.Y. 1990); *see also Holland v. Fahnestock & Co.*, 210 F.R.D. 487, 495 (S.D.N.Y. 2002) (collecting cases).  Here, Defendants do not specify how Incarcerated Plaintiffs' interest would be impaired by their absence in this litigation beyond identifying the differences between Incarcerated Plaintiffs' potential claims and the Free Exercise claim raised by Non-Incarcerated Plaintiffs in this litigation.  As noted in Defendants' Memorandum of Law, Incarcerated Plaintiffs can bring a RLUIPA claim against Defendants.  (*See* Defs.' Mem. 22.)  Since this type of claim is unavailable to Non-Incarcerated Plaintiffs, the instant Action will not impair Incarcerated Plaintiffs' ability to bring a RLUIPA claim against Defendants.  Furthermore, if Non-Incarcerated Plaintiffs are unsuccessful in *their* Free Exercise claim in this Action, Incarcerated Plaintiffs will not be precluded from asserting their own Free Exercise claim against Defendants because the facts underlying their Free Exercise claim may overlap with but are not dependent on those of the Non-Incarcerated Plaintiffs.  As noted in Defendants' Memorandum, "[Non-Incarcerated] Plaintiffs' interest is limited to whether they may hold Quarterly Meetings [] with

21

incarcerated co-religionists . . . , but the issue for incarcerated members of Green Haven Meeting is whether they can have Quarterly Meetings at all." (*Id.*)

Lastly, Defendants argue that Incarcerated Plaintiffs are a necessary party under Rule 19(a)(1)(B)(ii) "because without them Defendants will be 'existing part[ies] subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations . . . .'" (*Id.* at 21.)  Specifically, Defendants argue they "may be obliged to litigate the same issue against Green Haven Meeting, and defend their conduct under the stricter RLUIPA standard, even if they prevail against [Non-Incarcerated] Plaintiffs on the merits" of this case. (*Id.*)  However, Defendants' argument about duplicative lawsuits with conflicting outcomes is speculative.  At present, there is no other suit by Incarcerated Plaintiffs against Defendants pending, so there is no present danger of Defendants being subject to inconsistent outcomes. *See Fed. Deposit Ins. Corp. v. Home Sav. Bank*, No. 90-CV-2037, 1993 WL 41818, at *7 (E.D.N.Y. Feb. 9, 1993) (rejecting argument that a future suit with a potential, consequent third party action places movants at "direct and substantial risk of multiple, inconsistent obligations" because the argument was "speculative at best"); *Drankwater v. Miller*, 830 F. Supp. 188, 193–94 (S.D.N.Y. 1993) (same).

"If a party does not qualify as necessary under Rule 19(a), then the [C]ourt need not decide whether its absence warrants dismissal under Rule 19(b)." *Viacom Int'l, Inc.*, 212 F.3d at 724.  Because Incarcerated Plaintiffs are not a necessary party within the meaning of Rule 19, the Court declines to dismiss the Complaint for failure to join a necessary party under Rule 12(b)(7).

22

### III.  Conclusion

For the reasons set forth above, the Motion is denied.  The Clerk of the Court is respectfully directed to terminate the pending Motion at Dkt. 123.  The Court will hold a telephonic status conference on May 28, 2026, at 12:30 p.m.

SO ORDERED.

Dated:   March 31, 2026
         White Plains, New York

_____
KENNETH M. KARAS
United States District Judge

23